2003 SD 141

**Larry WELCH, as the special administrator of the Estate of Caz "Larry" Welch, deceased, Plaintiff and Appellant,**

v.

**Allen HAASE and Zenda Haase, Defendants and Appellees,**

**Darby Klein and Earla Klein, Defendants and Appellees.**

**No. 22684.**

Supreme Court of South Dakota.

Argued Oct. 7, 2003.

Decided Dec. 3, 2003.

sufficient evidence of damages, assumption of the risk, and contributory negligence. The jury returned a general verdict in favor of all four defendants. Welch appeals the denial of his subsequent motion for judgment notwithstanding the verdict or new trial. Welch argues that the jury verdict was unfair and the subject of passion and prejudice. He also argues that the trial court erroneously instructed on the law governing landowner liability and the furnishing of alcoholic beverages by social hosts. We affirm the trial court's denial of Welch's motion relating to the Haases. With respect to the Kleins,[1] we reverse and remand for new trial on both the wrongful death and the survival actions.

George F. Johnson of Johnson, Eklund, Nicholson & Peterson, Gregory, SD, for plaintiff and appellant.

John S. Theeler, John F. Cogley of Morgan, Theeler, Wheeler, Cogley & Petersen, Mitchell, SD, for defendants and appellees Haase.

ZINTER, Justice.

[¶ 1.] Larry Welch (Welch), special administrator of the Estate of Caz Welch (decedent), initiated wrongful death and survival actions following Caz's death in a single car auto accident. The actions were brought against the driver of the vehicle (Darby Klein), the driver's mother (Earla Klein), and the two landowners (Allen and Zenda Haase) who hosted a party immediately preceding the accident. Darby and Earla Klein did not retain counsel, did not answer the complaint, and proceeded to trial in default only to "find out how much [they] owe." Haases defended on a number of grounds including a lack of landowner liability, a lack of proximate cause, in-

## FACTS AND PROCEDURAL HISTORY

[¶ 2.] On May 21, 2000, the graduating class of Winner High School had a graduation party. The students had organized the party throughout the school year. They collected money to buy several kegs of beer for the party, and they arranged for someone over twenty-one to purchase it. By graduation, the location of the party was the only detail that had not been determined. Some students approached Allen and Zenda Haase to host the party. Haases' oldest son was in the graduating class, and Haases were asked if the party could be held at their farm, which was located forty miles from Winner. Haases agreed.

[¶ 3.] A large number of students attended the party, including Darby Klein and Caz Welch. Parents and other adults also attended. The adults were at the party to help enforce an informal set of "rules" that had developed from prior Winner graduation parties. The "rules" were purportedly designed to prevent alcohol-

1. Although Kleins appeared at trial, they did not appear or participate in this appeal.

related driving accidents. One of the "rules" required the collection of all car keys in buckets as the students arrived. Adults were also posted at a gate put up by students to guard the farm's exit. Drivers wishing to leave the party were required to call a parent before leaving.

[¶ 4.] The Haases did not provide any of the alcohol consumed by the students at the party. They did, however, stay at their farm during the party. They also helped the other "chaperones" enforce the "rules." Consequently, Haases helped collect the students' keys and helped supervise the exit gate.

[¶ 5.] One of the other parents at the party was Ronda Godel. She was Caz Welch's mother. She also assisted with collecting the students' keys. However, she left early in the morning before the party was over. She did not leave any instructions with the Haases regarding Caz and whether he had her permission to leave.

[¶ 6.] At the end of the evening, the bucket of keys remained inside the Haases' home. When students got ready to leave the following morning, they were required to go into the house to get their keys. The students were also supposed to call a parent to get permission to drive home. Many students called their parents from the phone at the Haase home. Other students used cell phones to call their parents.

[¶ 7.] As they were leaving, the students had to drive through the gate that had been set up the previous evening. Zenda Haase and another adult were at the gate that morning. As students reached the gate, Zenda asked them to call their parents if they had not already done so from the house phone. One of the drivers Zenda encountered at the gate was Darby Klein. He was driving a van with five passengers, including Caz Welch.

[¶ 8.] Zenda asked Darby to call his mother to ask if it was "okay" to drive home and to tell her who he had with him in his van. Darby spoke to his mother, and allegedly got permission to drive home. Zenda knew that Darby had been at the party all night and that he had been drinking, but she testified that she did not see evidence that he was under the influence. Zenda did not take any other steps to ensure that Darby could safely drive, and she allowed him leave the party.

[¶ 9.] The passengers in Darby's van were all good friends. They had "partied" in a similar manner many times in high school. In fact, they had been drinking at and driving home from parties the entire week of graduation. One of the passengers, Summer Cousins, testified that on this day, she and the other passengers in the van were all aware that Darby had been drinking at the party. However, they all got in the van anyway because it was not the first time they had been with Darby when he was driving after he had been drinking.

[¶ 10.] After leaving the Haases', Darby drove for several miles. During the trip, Caz moved from the back of the van to the front to change the radio station. At the same time, someone in the back of the van asked for a cell phone. Darby turned back to give the phone to the passenger and lost control of the van. The van entered a ditch, hit an approach, rolled, and landed upside down. Darby described the accident at trial:

> I guess, what I remember is, I was just driving down the road. Caz came, came up and he was fiddling with the radio, and then when he started going back, I looked back, and when I looked forward, there was the approach, and then that's all I remember. Because, I looked back and looked forward, and by that time we

were in the ditch and already on the approach. And I—I remember trying to hit the brakes, but there was—I didn't that's all I remember about it. That I tried to stop and I couldn't.

[¶ 11.] As a result of the accident, Caz was pinned between the seats and the roof of the van, which had been pushed together by the accident. He was not able to move. Summer Cousins, who was in the van with Caz, testified that after the accident, she and Caz were trapped in the van. She saw that Caz was trapped by the seats, and she tried to push the seats to get them to move. She also testified that Caz was struggling to breathe.

[¶ 12.] Another vehicle leaving the party arrived just after the accident. One of the passengers in that car, Dana Fisher, testified that the boys she was riding with "got out of our car, and went down to help, all they could. They ended up having to punch a window, break a window open to get Summer out. They tried all they could to help Caz." She went on to explain that Caz:

> [W]as not able to get out. They said he was stuck. He was still alive at that point. He was—a couple of the guys had, like, squeezed his hand and he squeezed back. But there just wasn't anything that they could do to, like, move—get the van off of him or anything.

Clayton Peters, another passenger in the car, testified that after he unsuccessfully attempted to lift the vehicle:

> There really wasn't much for us to do, and I didn't want to leave [Caz] there by himself, because if it was me, I wouldn't want to be by myself. So I grabbed his

hand, he was squeezing my hand. And I put my hand on his stomach, and I crawled over to see his face and his eyes were still open. And I didn't like the sight of that, so I backed up, and I just waited for everything to go. I didn't know what else to do.

Caz's friends could not get him free. He was trapped in the van, and he ultimately died from suffocation. Clayton indicated that he had felt Caz's last breath, and that from the time of the accident until Caz's last breath was "maybe a few minutes."

[¶ 13.] A highway patrolman arrived at the scene of the accident shortly after it happened. Trooper Pete Eng spoke to Darby. After waiving his Miranda rights, Darby told Eng that he had been consuming alcoholic beverages. A preliminary breath test conducted at the scene revealed that Darby had a .103 breath/alcohol test. This test was administered approximately four hours after Darby left the Haases'.

[¶ 14.] Darby was taken to a hospital, where three blood samples were taken one hour apart. The results of those tests revealed blood alcohol contents of .118, .10, and .08 percent. From those tests and his observations, Eng opined that at the time of the accident, Darby "was under the influence of an alcoholic beverage."

[¶ 15.] Following the accident, Welch brought wrongful death and survival actions against Darby Klein, Earla Klein, and the Haases. Both Darby and Earla Klein failed to answer, and appeared throughout trial in default. The trial court instructed the jury that the Kleins admitted both negligence and proximate cause.[2]

---

2. For example, in Instruction No. 42, the court instructed the jury that the Kleins had "admitted that they were negligent and that their negligence was a proximate cause of the injury and death of Caz Welch." Further-

more, in Instruction No. 12, the court identified the claims and defenses. The court instructed that Welch claimed the Kleins were both negligent and that their negligence "contributed to the injury and death of Caz." The

The trial court also instructed that the contributory negligence and assumption of the risk defenses were available to the Haases,[3] but not the Kleins. The trial court ultimately instructed the jury that the Kleins, "have admitted liability in this case. Therefore, the only issue for you to decide against Darby Klein and Earla Klein is the amount of damages, if any, [Welch] is entitled to recover."

[¶ 16.] Although there was no dispute that Haases provided no alcohol at the party, the trial court also instructed the jury on the law concerning the provision of alcohol by a social host. The trial court further instructed on the liability of landowners. The trial court gave these instructions because it had observed jury confusion over the issues in voir dire.

[¶ 17.] After a four-day trial, the jury returned a general verdict in favor of all four defendants. Welch did not object to this general verdict form. Welch subsequently filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a motion for new trial. The trial court denied the motion as to all defendants. Welch appeals, raising the following issues:

1. **Whether the trial court erred in denying Welch's motion for a judgment notwithstanding the verdict, or alternatively, motion for new trial.**

court then instructed that the Kleins have "admitted liability [not just negligence] on this claim. The only issue remaining for the jury is the amount of damages...." Finally, in Instruction No. 21, the court distinguished the Kleins' admitted liability from the issues to decide against the Haases. With respect to the Haases, the court instructed that the jury needed to determine the issues of "liability, contributory negligence, assumption of the risk, and *proximately caused damages* ...." (Emphasis added.) However, the court instructed that the Kleins have "admitted liability." Therefore, the only "issue for you to

2. **Whether the trial court erred in instructing the jury on the social host and landowner liability issues.**

## ANALYSIS AND DECISION

1. **Whether the trial court erred in denying Welch's motion for a judgment notwithstanding the verdict, or alternatively, motion for new trial.**

[¶ 18.] In supporting his motion for JNOV or new trial, Welch argued that "[t]he jury's decision in this case seems to reflect the general attitude in Tripp County that Winner's annual graduation party is a necessary evil, and that it should not result in civil liability to anyone under any circumstances." Welch therefore concluded that the verdict was "unfair and unreasonable," and the result of "passion, prejudice, or mistake of law." Welch relies upon following quote from a Pennsylvania case to illustrate his position that the jury's decision ignored uncontested evidence and was the result of passion, prejudice or mistake of law:

[T]he jury is free to believe all, some, or none of the testimony presented by a witness. However, this rule is tempered by the requirement that the verdict must not be a product of passion, prejudice, partiality, or corruption, or must bear some reasonable relation to the loss

decide against Darby Klein and Earla Klein is the amount of damages, if any, the Plaintiff is entitled to recover."

3. These instructions stated "Defendants Darby Klein and Earla Klein have admitted their negligence and the recovery of the Plaintiff against Darby Klein and Earla Klein shall not be barred by the assumption of the risk ..." and that "the recovery of the Plaintiff against Darby Klein and Earla Klein shall not be reduced by any contributory negligence...."

suffered by the plaintiff as demonstrated by uncontroverted evidence presented at trial. The synthesis of these conflicting rules is that a jury is entitled to reject any and all evidence up until the point at which the verdict is so disproportionate to the uncontested evidence as to defy common sense and logic.

*Neison v. Hines,* 539 Pa. 516, 653 A.2d 634, 637 (1995) (internal citations omitted). As a general proposition, we agree with this rule. We therefore proceed to consider its applicability to each motion and each defendant.

## Motion for JNOV

▇▇▇ [¶ 19.] Our review of motions for JNOV is conducted under the abuse of discretion standard. *Fechner v. Case,* 2003 SD 37, ¶ 6, 660 N.W.2d 631, 633.

Rulings on motions for judgment notwithstanding verdict are reviewed under the abuse of discretion standard. Evidence and inferences most favorable to the nonmoving party are examined to determine whether there is substantial evidence to support the jury's judgment. Conflicting evidence is not reweighed; witness credibility is not reassessed. The moving party's evidence is only given consideration if it is uncontradicted or tends to amplify, clarify or explain evidence which supports the verdict.

*Id.* at 633–34 (internal citations omitted).

[¶ 20.] On appeal and at the original motions hearing, Welch only argued that "the trial was fundamentally unfair." He explained:

I don't know if judgment notwithstanding the verdict is the right thing, and I don't know whether a new trial is the right thing, Your Honor. I think, though, that at some level, we need to step back from the case and just say, what is fair? What was presented? What arguments were considered? And

then try to decide what should be done to correct the wrong that the jury committed.

We review this argument as it relates to the Haases and then as to the Kleins.

### a. Allen and Zenda Haase

▇▇▇ [¶ 21.] We first observe that there is no general "fairness" standard to be considered under a motion for JNOV; rather, the standard is "whether there is substantial evidence to support the jury's judgment." *See supra* ¶ 19. Furthermore, that evidence must be reviewed "in a light most favorable to the verdict." *C & W Enters., Inc. v. City of Sioux Falls,* 2001 SD 132, ¶ 11, 635 N.W.2d 752, 756. Considering the appropriate standard of review, the trial court could not have granted a JNOV against the Haases unless the court determined that, as a matter of law, Haases were negligent; Caz's negligence, if any, was slight; Caz did not assume the risk; and, that the Hasses' negligence proximately caused the accident and damages. However, Haases submitted evidence in support of these defenses. Therefore, those issues became questions for the jury, and this Court does not reweigh the facts supporting those defenses. Considering the evidence Haases submitted on these issues, the trial court did not abuse its discretion in denying Welch's motion for JNOV.

### b. Darby Klein and Earla Klein

▇▇▇ [¶ 22.] The motion for JNOV against the Kleins is subject to a procedural defect. A motion for JNOV is linked to a party's motion for directed verdict, which must first be brought before the trial court at the conclusion of evidence at trial. Therefore:

A motion for judgment n.o.v. "is based on and relates back to a directed verdict motion made at the close of all the evi-

dence." The grounds for the directed verdict motion are merely brought before the trial court for a second review. *Id.* (internal citations omitted).

[¶ 23.] Here, Welch made no motion for directed verdict against the Kleins at trial. Therefore, Welch waived the right to ask the trial court to enter a JNOV against the Kleins. As we stated in *Moosmeier v. Johnson,* 412 N.W.2d 887, 888 (S.D.1987):

> The denial of the motion for judgment n.o.v. is not properly before us since such motions "can be considered only when the moving party at trial requested a directed verdict and thus the motion in effect brings before the trial court for review a second time the grounds urged in support of the motion for directed verdict."

Because Welch did not request a directed verdict against the Kleins, the motion for a JNOV issue is not properly before us. Even when the issue involves a plaintiff questioning the sufficiency of the damage award, the prior motion is required. As the Eighth Circuit Court of Appeals observed:

> Permitting movants for any reason to make an initial motion for judgment as a matter of law [JNOV] after the return of the jury verdict deprives the nonmoving party the opportunity to cure the deficiency in their case, if any exists. Allowing the motion to go forward would set an unacceptable precedent.

*Douglas County Bank & Trust Co. v. United Fin. Inc.,* 207 F.3d 473, 478 (8thCir.2000). We agree.

### Motion for New Trial

[¶ 24.] Welch argues that "[b]ased upon the evidence presented at trial, the jury's decision to award zero damages was inconsistent and contrary to law." Welch asserts that because the jury awarded no damages against Darby Klein and Earla Klein (who were in default), the jury's decision "calls into question the jury's entire decision making process." Welch surmises that:

> [I]f the jury acted under passion, prejudice, or mistake of law while considering the claims against Darby and Earla Klein, [because they were in default,] how can anyone say with certainty that the jury was not acting under passion, prejudice, or mistake of law while considering the claims against Allen and Zenda Haase?

[¶ 25.] However, Welch utilizes an incorrect standard of review. This Court has often stated that:

> In reviewing a jury award ... "[i]f the jury's verdict can be explained *with reference to the evidence, rather than by juror passion, prejudice or mistake of law,* the verdict should be affirmed." Thus, "if a verdict is susceptive to more than one construction, the construction which sustains the verdict must be applied." Neither the trial court nor this [C]ourt may set aside a verdict unless it is clearly "unreasonable, arbitrary and unsupported by the evidence."

*Zahn v. Musick,* 2000 SD 26, ¶ 31, 605 N.W.2d 823, 830 (internal citations omitted) (emphasis added). Furthermore, "[t]he trial court is best able to judge whether the damages awarded [or not awarded] by a jury are the product of passion or prejudice." *Maryott v. First Nat'l Bank of Eden,* 2001 SD 43, ¶ 26, 624 N.W.2d 96, 105 (quoting *Berry v. Risdall,* 1998 SD 18, ¶ 9, 576 N.W.2d 1, 4). We again review this motion as it relates to the Haases and then as to the Kleins.

#### a. Allen and Zenda Haase

[¶ 26.] In this case, there are many "references to the evidence" that

support the verdict in favor of the Haases. In fact, at the trial court hearing and in his brief to this Court, Welch himself has identified numerous possibilities that support the jury verdict. Welch's brief states:

> Allen and Zenda Haase will no doubt argue that ... the decision to award no damages against them was *probably* based upon one of their affirmative defenses. However, there is absolutely no way to know: 1) if the jury found that Welch's claims were barred because Caz Welch assumed the risks; 2) if the jury found that Welch's claims were barred by contributory negligence that was more than slight; 3) if the jury simply found that neither Allen or Zenda Haase were negligent; 4) if the jury found that Allen and/or Zenda Haase was/were negligent, but the negligence was not a proximate cause of the wreck that caused Caz Welch's suffocation and death; 5) if the jury awarded zero damages while acting under passion, prejudice, or a mistake of law; or 6) ... if the jury was confused by the improper instructions on landowner liability and South Dakota's Social–Host statute.

Because reasons (1) through (4) all support the verdict and can be explained with references to the evidence, rather then juror passion, prejudice or mistake of law, we affirm the denial of the motion for a new trial against Haases.

### b. Darby Klein and Earla Klein

[¶ 27.] The motion for new trial relating to Kleins is, however, different because they admitted liability on both the wrongful death and the survival actions. In fact, the trial court removed all defenses from the jury's consideration, and the jury was instructed to only determine Welch's damages. Because the Kleins admitted liability, the motion should have been granted if there was undisputed evidence of pain and suffering in the survival action or pecuniary loss in the wrongful death action. For the reasons set forth below, we believe that there was such evidence. Therefore, Welch was entitled to a new trial on damages for Kleins' admitted liability in the wrongful death and the survival actions.

### (Wrongful Death Cause of Action)

[¶ 28.] "In every action for wrongful death the jury may give such damages as they may think proportionate to the pecuniary injury resulting from such death to the persons respectively for whose benefit such action will be brought." SDCL 21–5–7. With respect to pecuniary injury,[4] Caz's mother and grandfather first identified what Caz would provide for them. The evidence reflected that Caz was especially close to his grandparents because he lived with them during high school after his mother moved to Aberdeen. The testimony also indicated that Caz planned to attend school. Caz's mother testified that Caz had been accepted to Mitchell Vo–Tech, where he planned to study computer programming. She testified that Caz "always told his grandpa and grandma he was going to college, and make a lot of money, and buy them a home." "South Dakota law requires that the beneficiaries show that they could 'reasonably expect' to receive such benefits." *Halvorsen v. Dunlap*, 495 F.2d 817, 822 (8thCir.1974) (further citations omitted).

[¶ 29.] In addition to the forgoing claim, "in a wrongful death action, wherein the decedent was a minor, ... [the] loss of companionship and society, which may be expressed by, but is not limited to, the words 'advice,' 'assistance' and 'protection' are proper elements of damage for [the jury] to consider in reaching their verdict." *Anderson v. Lale*, 88

---

4. Welch made reference to funeral expenses, but did not quantify that pecuniary injury.

S.D. 111, 122–23, 216 N.W.2d 152, 158–59 (1974). This rule also applies in cases regarding the death of an adult child. *Halvorsen*, 495 F.2d at 821. Caz was eighteen years old at the time of the accident.

[¶ 30.] With respect to a loss of companionship and society, Caz's mother testified that Caz was "a gentle guy" who "smiled all the time." She said that he was an avid hunter and fisherman, and he enjoyed bowling and playing football. Despite living in a different city, she maintained a close relationship with Caz, and they "talked every day on the computer at 10 o'clock." Caz's grandfather, Larry Welch, also testified that:

> Caz Welch was my—he was a special grandson. We had him most of his life. And we loved him like a son. Me and him [sic], we went fishing all the time. Hunting. Trapping. We went pheasant hunting. And just seemed like we was [sic] together all the time. And he would help me cut up deer, and I learned [sic] him to skin pheasants, and he would go down and he would work for Kucera's, skin peasants. We went camping together, took Darby with us. Went swimming. Went to the Keyapaha River thousands of times. And I think of him every day. He was just a special boy.

Larry Welch also testified about things that he and Caz were planning to do, but had not yet had a chance to do together. He stated that Caz "was like a son. And he was a buddy. And I ache for him every day."

[¶ 31.] Considering all of the foregoing, there was undisputed evidence of some pecuniary loss. Therefore, in light of Kleins' admission of liability for damages, we believe that the verdict on this cause of action was "so disproportionate to the uncontested evidence as to defy common sense and logic." *Neison*, 653 A.2d at 637.

We therefore reverse and remand the wrongful death cause of action against Kleins for a new trial on damages.

### (Survival Action)

[¶ 32.] We also believe that the trial court erred in failing to grant a new trial on Klein's admitted liability for damages arising from the survival action. On this cause of action, the only decision for the jury was to determine the amount of damages Welch sustained for the pain and suffering he endured before his death. The jury's decision to award no damages for the uncontested pain and suffering endured in this death by suffocation was also "disproportionate to the uncontested evidence." *Id.* We therefore reverse and remand the survival action against Kleins for new trial on damages.

2. **Whether the trial court erred in instructing the jury on the social host and landowner liability issues.**

[¶ 33.] Welch also argues that the trial court created jury confusion on Welch's claims against the Haases by instructing the jury on a social host's liability for providing alcohol and on landowner liability law. Welch contends that the problem was compounded when Haases' lawyer stated that "social host immunity applies" during his closing argument. Welch concedes that Haases' lawyer did not pursue that argument any further, but contends that "the damage had been done." Welch concludes that the instructions created reversible error requiring a new trial "because they conflicted with the applicable law, they were confusing, and they were misleading." We disagree.

[¶ 34.] In order to reverse for an improper jury instruction, the appellant must show not only that the instruction in question was erroneous when the instruc-

tions are viewed collectively, but also that the jury's verdict would have changed as a result of the erroneous instruction had it not been given. *City of Bridgewater v. Morris, Inc.,* 1999 SD 64, ¶ 6, 594 N.W.2d 712, 715. So also, instructions that are "[m]isleading, conflicting, or confusing" constitute reversible error; "[n]onetheless, an appellant must show not only that a particular instruction was erroneous, but also that is was prejudicial, meaning the jury probably would have returned a different verdict if the faulty instruction had not been given." *Davis v. Knippling,* 1998 SD 31, ¶ 4, 576 N.W.2d 525, 526–27 (further citations omitted).

▬ [¶ 35.] The first instruction at issue is instruction 15A, which governed the liability of owners of land. This instruction indicated that:

> Defendants Allen Haase and Zenda Haase cannot be found liable or negligent as defined in these instructions based upon their ownership of land. There is no injury or death that occurred on the land owned by Allen Haase and Zenda Haase, and Plaintiff [Welch] is not making a claim against them that relate [sic] to their being negligent or at fault as landowners.

Welch's only objection to this instruction was, "I think this instruction just confuses the issue about—we made it clear we are not suing for any land ownership issues, and I don't think it is a necessary instruction." Notably, Welch did not object on any ground other than jury confusion. Therefore, we only review the "confusion" objection.

[¶ 36.] With respect to jury confusion, the trial court responded to Welch's objection, observing:

> The Court is going to give 15A. I think in particular stemming from voir dire where there tended to be some assumptions that landowners did have a—some liability issues, I just think that in order to clearly state the law to the jury, that this instruction is necessary.

We agree with the trial court's observation that, because some jurors thought land owners could be liable as a matter of law, there was a sufficient basis to give a clarifying instruction. Welch also failed to demonstrate prejudice because the trial court also gave other instructions explaining the circumstances under which Haases would be liable for their negligence.[5]

▬ [¶ 37.] The second instruction at issue summarizes South Dakota's statute governing a social host's furnishing of alcohol to another. Instruction 15B indicated that:

> Under South Dakota law, a social host who furnishes any alcoholic beverages is not civilly liable to any injured person or his estate for any injury suffered, including any action for wrongful death, or property damage suffered because of the intoxication of any person due to the consumption of such alcoholic beverages. The South Dakota Legislature has found that the consumption of alcoholic beverages, rather than the serving of alcoholic beverages, is the proximate cause of any injury inflicted upon another by an intoxicated person.
>
> The court has ruled, as a matter of law, that Allen Haase and Zenda Haase are not social hosts as defined by South

---

5. For example, in Instruction No. 25, the court instructed:

> Allen Haase and Zenda Haase, by voluntarily taking control of the car keys and acting as a gatekeeper at the gate, had a duty to use reasonable care in allowing Darby Klein to get control of his car keys and relinquishing control of the vehicle to him thereby allowing him to leave the party with passengers.

Dakota law. Plaintiff does not claim that Allen Haase and Zenda Haase furnished the alcohol for the Winner High School graduation party.

[¶ 38.] Welch objected to this instruction claiming that it would confuse the jury, and that the instruction was not applicable to the case. However, the trial court again observed that:

> [G]iven juror answers in the selection process, I believe that there is a belief in the community that if you have the beer there, that that in and of itself makes you responsible for whatever happens, and that is not the theory of this case, it is not the plaintiff's claims. And I think just to give the jury a full understanding of South Dakota law, that this is also necessary. The Court will give 15B.

[¶ 39.] On appeal, Welch argues that the instruction and the closing argument "created reversible error because they conflicted with the applicable law, they were confusing, and they were misleading." However, because Welch only objected at trial on the basis of possible confusion and applicability of the instruction, we only review those issues. *See* SDCL 15–6–51(a)[6] (providing that "[n]o party may claim error for the giving or failure to give an instruction unless that party objects stat-

ing distinctly the matter objected to and the grounds for the objection").

[¶ 40.] With respect to applicability and jury confusion, we again agree that this instruction was given to alleviate rather than create juror confusion. As with the prior issue, voir dire indicated juror misconception concerning liability for alcohol on the property. Some jurors apparently believed that having alcohol present may have made a landowner liable as a matter of law. Considering the apparent misconceptions of the law and Welch's claims, this instruction was applicable and was not confusing.

[¶ 41.] We finally observe that Welch has not contended that the verdict would have changed had either of the contested instructions not been given. In his brief to this Court, Welch merely contends that "there is simply no way to say with certainty why the jury found in favor of all four Defendants/Appellees." Because Welch fails to indicate how the verdict would have been favorable had instructions 15A and 15B not been given, we find no prejudicial error.

[¶ 42.] Affirmed in part, reversed in part, and remanded.

---

**6.** In the past, this Court has held that, based upon SDCL 15–6–51(b), "no grounds of objection to the giving or the refusing of an instruction shall be considered either on motion for new trial or appeal, unless presented to the court upon the 'settlement' of such instructions." *See, e.g., Parker v. Casa Del Rey–Rapid City, Inc.,* 2002 SD 29, 641 N.W.2d 112; *Grynberg v. Citation Oil & Gas Corp.,* 1997 SD 121, 573 N.W.2d 493; *Sundt Corp. v. South Dakota Dep't of Transp.,* 1997 SD 91, 566 N.W.2d 476; *Knudson v. Hess,* 1996 SD 137, 556 N.W.2d 73. Moreover, we have stated that:

> The complaining party must have specified and stated the grounds for [the] objection, and a mere general objection is not sufficient to preserve the right to appeal. An

attorney must be clear when objecting to jury instructions "so the trial court is advised of what possible errors exist and be granted the opportunity to correct any instructions."

*Parker,* 2002 SD 29, ¶ 15, 641 N.W.2d 112, 118 (citing *Sundt,* 1997 SD 91, ¶ 17, 566 N.W.2d at 480). Although the language of SDCL 15–6–51(b) that these cases quote was deleted from the 1998 revision of SDCL 15–6–51(b), SDCL 15–6–51(a) still provides that "[n]o party may claim error for the giving or failure to give an instruction unless that party objects stating distinctly the matter objected to and the grounds for the objection." *Id.* Therefore, we continue to adhere to the rules recognized by this line of cases.

[¶ 43.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.