#23976-a-JKM

**2008 SD 15**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                          Plaintiff and Appellee,

    v.

CHAD THOMAS DUBOIS,                          Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BEADLE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JON R. ERICKSON
Judge

\* \* \* \*

LAWRENCE E. LONG
Attorney General

FRANK GEAGHAN
Assistant Attorney General                 Attorneys for plaintiff
Pierre, South Dakota                       and appellee.

JAMES A. EIRINBERG                         Attorney for defendant
Sioux Falls, South Dakota                  and appellant.

\* \* \* \*

CONSIDERED ON BRIEFS
ON JANUARY 7, 2008

OPINION FILED **02/27/08**

#23976

MEIERHENRY, Justice

[¶1.]     A jury found Chad Dubois guilty of five counts of possession of child pornography.  Dubois appeals and we affirm.

## FACTS

[¶2.]     Dubois met Derek St. John, an adult, on an internet dating site.  St. John contacted Dubois via his 1-800 telephone number and the two began to date.  During this relationship, St. John had access to Dubois' computers.  While on Dubois' desktop computer, St. John observed a couple of pornographic pictures depicting children approximately "six to eight years old."

[¶3.]     Apparently disturbed by the pictures, St. John reported the pictures to his probation officer, Kathy Christenson.[1]  Christenson put St. John in contact with Shannon Riter, a special agent for the South Dakota Division of Criminal Investigation (DCI), who investigated the allegations and obtained a warrant to search Dubois' apartment.  Upon executing the search warrant, the authorities obtained possession of two computers, a laptop and a desktop.

[¶4.]     The State Forensic Laboratory (Lab) analyzed the computers' hard drives for pornographic images of children.  A forensic computer analyst for the Lab discovered sixteen images that he believed were of persons below the age of eighteen on both computers' hard drives.  One of the individuals depicted in a few of the pictures was later identified as A.J., a male minor who met Dubois in an internet chat room.

---

1.     St. John was on probation for Grand Larceny.

[¶5.] A.J., who was twelve or thirteen at the time the pictures were taken, testified that Dubois contacted him in the chat room, and they communicated about various topics including sex. A.J. also testified that when he told Dubois his age, Dubois was "pretty cool about it." After Dubois provided A.J. with his 1-800 telephone number, the two had contact by telephone. Many of the communications between Dubois and A.J. were sexually charged, covering both anal and oral sex.

[¶6.] During one of these conversations, Dubois elicited pictures from A.J. stating: "I will show you mine, if you show me yours." Dubois later sent pictures of himself naked to A.J. and succeeded in convincing A.J. to reciprocate by sending naked pictures of himself to Dubois. A.J. testified that Dubois requested pictures that displayed A.J.'s penis.

[¶7.] At trial, the State presented the jury with numerous pictures depicting alleged child pornography as well as other evidence which tended to prove Dubois had solicited the images. After viewing the evidence, the jury found Dubois guilty of five counts of possession of child pornography under SDCL 22-24A-3.[2] The court sentenced Dubois to thirty years in the South Dakota State Penitentiary.

---

2. The pertinent portion of SDCL 22-24A-3 reads:

> A person is guilty of possessing, manufacturing, or distributing child pornography if the person:
> ***
> (3) Knowingly possesses, distributes, or otherwise disseminates any visual depiction of a minor engaging in a prohibited sexual act, or in the simulation of such an act. Consent to performing these proscribed acts by a minor or a minor's parent, guardian, or custodian, or mistake as to the minor's age is not a defense to a charge of violating this section.

[¶8.] Dubois appeals raising the following issues:

1. Whether the trial court erred when it denied Dubois' motion to suppress evidence gained from the search of his home.
2. Whether the trial court erred when it permitted the State to present a chat room discussion engaged in by Dubois.
3. Whether there was sufficient evidence to convict Dubois of possessing child pornography.
4. Whether the sentence constitutes cruel and unusual punishment.

## ANALYSIS

*1. Denial of Dubois' Motion to Suppress*

[¶9.] Dubois contends there was no probable cause for the issuance of the search warrant; therefore, the executed search violated the Fourth Amendment of the United States Constitution and Article VI, section 11 of the South Dakota Constitution. We disagree.

[¶10.] When considering the sufficiency of evidence supporting a search warrant we are required to "look 'at the totality of the circumstances to decide if there was at least a 'substantial basis' for the issuing judge's finding of probable cause.'" State v. Helland, 2005 SD 121, ¶12, 707 NW2d 262, 268 (citations omitted).

> [O]ur inquiry is limited to determining whether the information provided to the issuing court in the warrant application was sufficient for the judge to make a "'common sense' determination that there was a 'fair probability' that the evidence would be found on the person or at the place to be searched." On review, we are limited to an examination of the facts as contained within the four corners of the affidavit. Furthermore, we review the issuing court's probable cause determination independently of any conclusion reached by the judge in the suppression hearing.

*Id.* (citations omitted).

[¶11.] Probable cause cannot be determined by some "formulaic solution." *Id.*

¶15. Probable cause "lies somewhere between mere suspicion and the trial

standard of beyond a reasonable doubt." *Id.* (citations omitted). We are required to assess the "probabilities in a particular context" and balance "the government's need to enforce the law with the citizen's right to privacy." *Id.* (citations omitted).

> We have previously articulated the standard for determining the existence of probable cause sufficient to support the issuance of a search warrant:
>
>> There need not be a prima facie showing of legal evidence of a suspected act. The standard of probable cause for the issuance of a search warrant is *a showing of probability of* criminal activity. In addition to the reasonable ground to believe that some violation of the law exists, probable cause for a search warrant necessarily implies that there is a violation in respect to some property located on some premises, or on some person, which can be identified expressly or by reasonable inference from the information given in the affidavit so as to be capable of being particularly described in the warrant.

*Id.* ¶16 (quoting State v. Kaseman, 273 NW2d 716, 723 (SD 1978)) (other citations omitted). Furthermore, we are "not empowered to conduct an after-the-fact de novo probable cause determination; on the contrary, the issuing court's legal basis for granting the warrant is examined with 'great deference.'" *Id.* ¶17 (quoting State v. Jackson, 2000 SD 113, ¶9, 616 NW2d 412, 416 (citing Illinois v. Gates, 462 US 213, 236, 103 SCt 2317, 2331, 76 LEd2d 527 (1983))). "[W]e will draw every reasonable inference possible in support of the issuing court's determination of probable cause to support the warrant." *Id.* (citing State v. Habbena, 372 NW2d 450, 456 (SD 1985) (citing State v. Wellner, 318 NW2d 324, 327 (SD 1982))).

[¶12.] Dubois contends the warrant was invalid as a result of a flawed affidavit, on the basis of the following assertions: 1) it failed to inform the magistrate the informant had a criminal past (including crimes of dishonesty), and

was currently on probation; and 2) the officer did not corroborate the information provided by the informant.

[¶13.]     The affidavit did omit the informant's criminal record; however, this omission does not vitiate probable cause. *See* State v. Corum, 663 NW2d 151, 160 (ND 2003) (holding that the omission of the criminal record and the leniency provided to the informant was not sufficient to negate probable cause for the warrant). "An affidavit that is purported to contain recklessly and intentionally misleading information or material omissions is reviewed under the two-part analysis in *Franks v. Delaware*, 438 US 154, 98 SCt 2674, 57 LEd2d 667 (1978))." *Helland,* 2005 SD 121, ¶32, 707 NW2d at 273. "First, [Dubois] must show by a preponderance of the evidence that a . . . statement knowingly and intentionally, or with reckless disregard for the truth was [omitted] . . . by the affiant in the warrant affidavit." *Id.* Second, Dubois must establish the omitted fact would have defeated probable cause. *Id.* Applying the *Franks* test, Dubois' arguments fail.

[¶14.]     The affidavit clearly stated that Agent Riter was "contacted by South Dakota probation officer Kathy Christenson" who informed Agent Riter that Christenson's "client, Derek St. John, provided criminal information regarding a male subject." The "common sense" inference drawn from these disclosures is that St. John was on probation and surely had a criminal record. *Habbena*, 372 NW2d at 456 (stating "[w]e will not read the warrant affidavit in a hypertechnical manner; rather, we read each affidavit as a whole and interpret each in a common sense and realistic manner") (citations omitted).

[¶15.]    Moreover, although the specifics of St. John's criminal record may have cast some doubt on his credibility, the omitted record does not vitiate probable cause demonstrated in the affidavit. The affidavit noted that the identity of the informant was known and that the informant furnished detailed eye-witness accounts of criminality. *See* State v. Sweedland, 2006 SD 77, ¶21, 721 NW2d 409, 414 (stating "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first hand, entitles the informant's tip to greater weight than might otherwise be the case"); *see also* State v. Griggs, 34 P3d 101, 104 (Mont 2001) (stating when an informant "whose identity is known, who personally observes the alleged criminal activity, and who openly risks liability by accusing another person of criminal activity-may not need further law enforcement corroboration"); *see also* State v. Thomas, 673 NW2d 897, 908-09 (Neb 2004) (stating informants who identify themselves are considered more reliable); State v. Lammers, 676 NW2d 716, 725 (Neb 2004) (stating "an untested citizen informant who has personally observed the commission of a crime is presumptively reliable").

[¶16.]    Additionally, contrary to Dubois' assertion, St. John's statements were corroborated. St. John named two individuals who at one time lived with Dubois, both were confirmed to have been on Dubois' lease at one time by the assistant manager of Dubois' apartment complex. St. John also stated that Dubois had a prescription for Dextromethamphetamine for social use. Dubois was confirmed to have "numerous prescriptions" of Dextromethamphetamine. The State's omission of St. John's criminal record in the affidavit did not affect its validity.

[¶17.] Dubois also claims that Agent Riter intentionally omitted evidence that St. John had a *clear* incentive to mislead investigators because he was a scorned lover. Although Dubois describes St. John as a "jilted lover," there was no evidence presented that would support this allegation. Other than unsupported general allegations, Dubois cannot point to any facts that show that St. John provided his testimony or statements to Agent Riter for personal gain or out of spite. In fact, the opposite appears to be true. St. John told Agent Riter that he ended the relationship with Dubois. Moreover, St. John testified that he had been over to Dubois' residence four times after he turned Dubois in for possession of child pornography. We cannot assume Agent Riter *knew* St. John was a "jilted-lover" and then *intentionally* omitted this fact when drafting the affidavit. Contrary to Dubois' assertion, the affidavit does not contain "intentionally misleading . . . omissions" related to St. John's criminal record or romantic history. *Helland,* 2005 SD 121, ¶32, 707 NW2d at 273.

*2. Chat Room Discussions*

[¶18.] Next Dubois contends that it was reversible error to present content of internet chat room conversations, not related to any of the pictures charged, to the jury. He claims the admission of these "prior bad acts" was a violation of SDCL 19-12-5 (Rule 404(b))[3] and SDCL 19-12-3 (Rule 403),[4] as well as his right to due

---

3. SDCL 19-12-5 states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent,

(continued . . .)

process and a fair trial as articulated in both the Fifth Amendment of the United States Constitution and Article VI, section 2 of the South Dakota Constitution.

[¶19.]     It is well established that the trial court's rulings on evidentiary matters are presumed to be correct. State v. Crawford, 2007 SD 20, ¶13, 729 NW2d 346, 349. "This Court must review the trial court's decision to admit these prior acts under an abuse of discretion standard." State v. Janklow, 2005 SD 25, ¶39, 693 NW2d 685, 698. Dubois "must first demonstrate error and then show that error was prejudicial." *Crawford*, 2007 SD 20, ¶13, 729 NW2d at 349.

[¶20.]     Rule 404(b) allows the State to admit evidence of a defendant's other acts evidence for the limited purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." SDCL 19-12-5. Prior to the admission of other acts evidence, the trial court must undergo a two-step process. "First, the offered evidence must be relevant to a material issue in the case. Second, the trial court must determine '[w]hether the probative value of the evidence is substantially outweighed by its prejudicial effect.' This balancing must be conducted on the record." State v. Owens, 2007 SD 21, ¶14, 729 NW2d 356, 362-63.

---

(. . . continued)
        preparation, plan, knowledge, identity, or absence of mistake or accident.

4.    SDCL 19-12-3 states:
        Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[¶21.]    Dubois' defense strategy, from the opening statement and throughout the trial, focused on the claim that Dubois had no knowledge of these pictures. He asserted that these pictures were downloaded by someone else without his knowledge or by mistake.[5] The State argued that this trial tactic opened the door for it to prove absence of mistake and that Dubois had knowledge of the content and presence of the pictures. State v. Anderson, 2000 SD 45, ¶38, 608 NW2d 644, 656 (noting that trial tactics may open doors for evidence which would typically not be permitted). Ultimately, the trial court permitted a single chat to be read into evidence under Rule 404(b).

[¶22.]    Prior to the chat's admission, the trial court conducted the two-step test as required by Rule 404(b). Initially, the test began at a pre-trial motion hearing where Dubois sought to suppress the chat logs. Dubois argued the chats were irrelevant and highly prejudicial and would only be used to "inflame and bias the jury towards [Dubois]." The State argued that the chats were relevant to combat the defense of identity and lack of knowledge. Reciting the two-step test, the trial court indicated that the chat logs might be relevant depending on Dubois'

---

5.    In Dubois' brief he asserted that there were no oral or written findings to explain why the chat log was admissible. Contrary to this assertion the trial court provided Dubois with many warnings that he could potentially open the door wide enough to allow the chat room discussion into evidence. Finally, the court stated that:

> [F]rom the very beginning, in the opening statements, the defense has indicated that part of the defense was that someone else did that. There were other users and they could have been the ones who placed [the pictures] on there. In your cross-examination of Mr. Light, you went into that, that there were twenty-four others who were using this.

defense strategy, yet suppressed the evidence for the time being.  However, the trial court emphasized that if Dubois "presents evidence which indicates that [he's] trying to argue it's a mistake or there's no knowledge or no plan or preparation, in that case the State in rebuttal, on a hearing outside the presence of the jury, I may allow them in to show one of those things."  The trial court further indicated that the chat(s) "may well be relevant and it may outweigh the prejudicial effect."

[¶23.]    After Dubois presented a defense which focused on mistake of identity and lack of knowledge, the judge revisited the issue.  The trial court informed Dubois that, by arguing "someone else did it" he had opened the door for a single chat to come into evidence.  Although the trial court did not repeat the two-step test at that time, the trial court indicated why the evidence was relevant and permitted the State and Dubois to argue the issue.

[¶24.]    First, the State described how the evidence was relevant to rebut Dubois' defense of identity and lack of knowledge.  Second, the state argued that it was not prejudicial.  Then, Dubois again claimed the evidence was irrelevant; however, he did not argue the evidence was prejudicial.  Faced with the evidence presented, the trial court only permitted the admission of a single chat.[6]  Although the trial court did not repeat on the record the balancing procedure analysis

---

6.    The complained of chat, which was allowed to be read into the record, was allegedly between Dubois and another boy who claimed to be fifteen years old.  Dubois carried on a sexually charged conversation with this person and then sent him to a website where the alleged "fifteen-year-old" could view nude pictures of Dubois.  Dubois asked the person if he had any pictures or a camera, the "fifteen-year-old" had neither.  Dubois then provided the "fifteen-year-old" with his 1-800 number so they could converse telephonically and attempted to schedule a face-to-face meeting.

previously conducted at the motion hearing, the court had clearly warned that if Dubois asserted the defense of mistake of identity and no intent, the probative value "may outweigh the prejudicial effect."

[¶25.]     To determine if the court conducted the two-part test, we consider the court's analysis at both the pre-trial motion hearing and during trial.  Therefore, although the balancing test appears deficient when one merely reads the trial transcript, it becomes more complete when read in conjunction with the pre-trial motion hearing.  The trial court clearly warned that its original determination of relevance and prejudice would change if Dubois claimed lack of knowledge or mistake.  When Dubois made those claims, the court admitted one chat.  The court substantially applied the test, and we find no abuse of discretion in admitting the evidence.

[¶26.]     Finally, even if the evidence was admitted in error, Dubois fails to demonstrate how the error was prejudicial.  State v. Fool Bull, 2008 SD 11, ¶10, 745 NW2d 380, 385 ("Error is prejudicial when, in all probability . . . it produced some effect upon the final result and affected rights of the party assigning it.")

[¶27.]     The State presented as a witness one of the victims, A.J., depicted in the pictures representing three of the counts.  A.J. testified to being twelve to thirteen years of age during his communications with Dubois and at the time the nude pictures of himself were taken.  A.J. recounted the context under which he took the images for Dubois to download.  A.J. met Dubois in a Yahoo chat room, "South Dakota Chat."  The relationship began innocent enough, discussing school and other neutral topics; however, even in the first chat Dubois suggested the two

trade pictures, stating: "I will show you mine, if you show me yours." Eventually the conversations turned to sexual topics: "Like anal and oral sex." A.J. testified that he informed Dubois of his age and Dubois was "pretty cool about it" and the two "[c]ontinued to talk . . . about sex stuff." Similar to Dubois' relationship with St. John, Dubois also provided A.J. his 1-800 number and asked A.J. if he would like to converse on the telephone. A.J. called Dubois three to four times and the contents of the conversations basically were: "How was your day. And then like sex stuff." At first the two talked on-line or by telephone, every day for a couple of months. Overall, the two stayed in contact for a little over a year.

[¶28.] During these communications, Dubois sent naked pictures of himself to A.J. and then requested A.J. take "nude pictures" of himself and send them to Dubois. Dubois specifically requested images that displayed A.J.'s penis. A.J. testified that he was "convinced" by Dubois to take nude pictures of himself and send them to Dubois. The pictures were taken by A.J. in his bedroom while A.J. was twelve or thirteen years old and engaged in a sexually charged conversation/relationship with Dubois. Although Dubois requested to meet with A.J. personally, the meeting never occurred.

[¶29.] Furthermore, St. John testified that he asked Dubois about the children depicted in the illicit pictures, to which Dubois allegedly replied: "they [children depicted in images] were old enough to know what they were doing . . . they knew what they were doing." Based on these and other facts presented at trial, the State presented ample evidence, even without the challenged chat-room

testimony, to convict Dubois of knowingly possessing pictures of minors engaging in prohibited sex acts. SDCL 22-24A-3(3).

[¶30.]     Dubois complains of other admissions of prior acts evidence; however, Dubois failed to object to these at trial. Consequently, we could only review them under the "plain error" test. State v. Nelson, 1998 SD 124, ¶8, 587 NW2d 439, 443. The complained of evidence does not constitute plain or prejudicial error, nor does it constitute a miscarriage of justice; thus, the plain error test does not apply. *Id.* ¶8; SDCL 23A-44-15. Therefore, because Dubois failed to object to these issues at trial, the same are waived. Interest of JMJ, 2007 SD 1, ¶25, 726 NW2d 621, 632-33 (stating that if the issue is not preserved at trial it is waived) (citation omitted).

*3.     Sufficiency of the Evidence*

[¶31.]     Dubois contends that the evidence presented by the State was insufficient to support the guilty verdict. We disagree.

[¶32.]     This Court's standard of review in a challenge to the sufficiency of the evidence is well settled:

> In determining the sufficiency of the evidence on appeal in a criminal case, the issue before this Court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. In making that determination, we accept the evidence and the most favorable inferences fairly drawn therefrom, which will support the verdict. Moreover, the jury is . . . the exclusive judge of the credibility of the witnesses and the weight of the evidence. Therefore, this Court does not resolve conflicts in the evidence, or pass on the credibility of witnesses, or weigh the evidence.

State v. Lewis, 2005 SD 111, ¶8, 706 NW2d 252, 255 (quoting State v. Pasek, 2004 SD 132, ¶7, 691 NW2d 301, 305). Furthermore, "[n]o guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn

therefrom, sustains a reasonable theory of guilt." State v. Barry, 2004 SD 67, ¶6, 681 NW2d 89, 91-92 (citing State v. Knecht, 1997 SD 53, ¶22, 563 NW2d 413, 421).

[¶33.] For the crime of possession of child pornography, the State must prove the individual "[k]nowingly possesses, distributes, or otherwise disseminates any visual depiction of a *minor engaging in a prohibited sexual act*, or in the simulation of such an act." SDCL 22-24A-3(3) (emphasis added); s*ee also* SDCL 22-24A-2(2) (defining child pornography as: "any image or visual depiction of a minor engaged in prohibited sexual acts"). SDCL 22-24A-2 (16) defines a "prohibited sexual act" as:

> . . . [A]ctual or simulated exhibition of the genitals, the pubic or rectal area, or the bare feminine breasts, in a lewd or lascivious manner; . . . . The term includes encouraging, aiding, abetting or enticing any person to commit any such acts as provided in this subdivision. . . .

[¶34.] Dubois first contends that the State did not prove he had "knowingly" possessed the pictures. The evidence at trial showed otherwise. St. John testified that he confronted Dubois about these images on his computer several times. When confronted about the pictures, Dubois stated: "they [children depicted in the images] were old enough to know what they were doing." A.J. testified that the images representing counts IV, V, and VI were of himself at age twelve or thirteen. He also testified how Dubois solicited these pictures of A.J.'s penis during sexually charged conversations. The evidence was sufficient to satisfy the knowledge element of the charge.

[¶35.]     Dubois next claims that the images representing counts IV, V, and VI[7] did not depict lewd or lascivious acts but merely were naked pictures of a minor. Although the South Dakota statutes do not provide a definition of "lewd or lascivious," *Black's Law Dictionary* defines lewd as: "[o]bscene or indecent; tending to moral impurity or wantonness," 926 (8th ed 2004); *Black's Law Dictionary* defines lascivious as: "([o]f conduct) tending to excite lust; lewd; indecent; obscene." 897 (8th ed 2004). In *United States v. Dost,* 636 FSupp 828, 832 (SDCal 1986), *aff'd* 812 F2d 1239 (9thCir 1987), *cert denied,* 484 US 856, 108 SCt 164, 98 LEd2d 118 (1987), the California district court set out factors to aid in determining whether a picture of a minor constituted "lascivious exhibition of the genitals or pubic area" under the Child Protection Act. The following factors were determined to be relevant:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> 2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity;
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> 4) whether the child is fully or partially clothed, or nude;
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Id.* at 831-32. For a picture to be considered lascivious, the court did not require all factors to be present; rather, the court considered "the overall content of the visual

---

7.     Dubois does not contest the lewdness or lasciviousness of pictures representing counts I and II.

depiction, taking into account the age of the minor." *Id.* at 832. The *Dost* factors are neither exhaustive nor mandatory; however, they provide a workable criterion to an otherwise case-specific inquiry. Moreover, although these factors are not without criticism,[8] numerous other jurisdictions utilize the *Dost* factors as guidance for determining whether a picture is "lewd or lascivious." *See generally* People v. Lamborn*, 708 NE2d 350 (Ill 1999); State v. Saulsbury, 498 NW2d 338 (Neb 1993); People v. Kongs, 30 CalApp4th 1741 (CalApp2Dist 1994); Alexander v. State, 906 SW2d 107 (TexCtApp 1995); Foster v. Commonwealth, 1989 WL 641956 (VaApp 1989); State v. Dixon, 1998 WL 712344 (TennCrimApp 1998); Commonwealth v. Bean, 761 NE2d 501 (Mass 2002); Cummings v. State, 110 SW3d 272 (Ark 2003); Foster v. Commonwealth, 1989 WL 641956 (VaCtApp 1989); State v. Morrison, 31 P3d 547 (Utah 2001); People v. Bimonte, 726 NYS2d 830 (NYCityCrimCt 2001).

[¶36.] Counts IV, V, and VI are images of A.J., a minor who testified at trial. A.J. testified to the context upon which he took these images. A.J. explained that Dubois sent him naked pictures of himself and then requested A.J. to reciprocate. The pictures were taken while A.J. was twelve or thirteen years old and engaged in a sexually charged conversation with Dubois. Dubois specifically requested images that displayed A.J.'s penis.

[¶37.] The nature of the depicted images in counts IV and VI are such that the jury could have found them lewd or lascivious. The focus of these images is on

---

8. In *U.S. v. Hill,* 322 FSupp2d 1081, 1086-1087 (CDCal 2004), the court criticizes the *Dost* factors as "malleable and subjective." *Id.* at 1085. While the *Dost* factors are not a "bright-line" test, they do provide some guidance.

A.J.'s genitals. A.J. is completely naked and posing in a provocative unnatural manner. Moreover, counts IV and VI are clearly "designed to elicit a sexual response," based on the conditions in which the pictures were taken and the unnatural poses. *Dost,* 636 FSupp at 832 (noting "combined effect of the setting, attire, pose, and emphasis on the genitals is designed to elicit a sexual response in the viewer, albeit perhaps not the 'average viewer', but perhaps in the pedophile viewer"); George v. State, 189 SW3d 28, 34-36 (Ark 2004) (noting that the act must be viewed in the context of a child's innocence).

[¶38.]    Count V is arguably not as lascivious as the other counts. Again, the picture is of a minor (A.J.) entirely nude. The picture depicts the entire left side of A.J.'s body. A.J.'s pelvis is extended and slightly turned to the camera exposing the entirety of A.J.'s genitalia. Further, A.J.'s genitalia occupy the center of the picture and appear to be the focal point of the image.

[¶39.]    Although whether count V represents a lewd or lascivious exhibition of a minor's genitals may be arguable, it was for the jury to determine. Cummings v. State, 353 Ark 618, 628, 110 SW3d 272, 277 (2003) (stating that whether an image is lewd is a question for the fact finder). Whether a picture is lewd or lascivious is a question for the fact finder, which will not be disturbed "unless it is clearly 'unreasonable, arbitrary and unsupported by the evidence.'" Welch v. Haase, 2003 SD 141, ¶25, 672 NW2d 689, 697 (citation omitted); Atkins v. Stratmeyer, 1999 SD 131, ¶6, 600 NW2d 891, 894 (stating that "a jury's verdict should not be set aside 'except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law'") (citation omitted). Moreover, "'[i]f the jury's

verdict can be explained *with reference to the evidence, rather than by juror passion, prejudice or mistake of law,* the verdict should be affirmed." *Welch,* 2003 SD 141, ¶25, 672 NW2d at 697 (citation omitted) (emphasis in original). "'[A]t the appellate level we do not substitute our judgment for that of the jury or trial court.'" State v. Luna, 264 NW2d 485, 488 (SD 1978) (citation omitted). A "verdict on appeal may not, as a matter of law, be set aside for insufficiency of the evidence if the evidence sustains some rational theory of guilt." *Id.* Considering the age of the minor, the nature and the content of the picture (count V), we find that the jury's verdict sustains a rational theory of guilt.

*4. Sentence of Thirty Years*

[¶40.]     For the five counts of child pornography the trial court sentenced Dubois to forty-six years, sixteen of which will run concurrently,[9] for a total of thirty years in the South Dakota State Penitentiary. Dubois contends that a thirty year sentence is grossly disproportionate to the crime committed and constitutes cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution and Article VI, section 23 of the South Dakota Constitution.

[¶41.]     "It is well-settled that we employ very limited principles in our /constitutional review of sentences. These principles include giving 'substantial deference' to the legislature's broad authority to determine the types and limits of punishment' and the notion that 'the Eighth Amendment does not mandate

---

9.     The trial court sentenced Dubois ten years each for counts I, II and IV all set to run consecutively, and eight years each for counts V and VI, set to run concurrently with counts I, II and IV.

adoption of any one penological theory.'" State v. Garber, 2004 SD 2, ¶28, 674 NW2d 320, 327 (citations omitted). As a result of these principles, a sentence within the statutory maximum will rarely be disturbed. *Id.* When assessing the constitutionality of a particular sentence we apply the gross disproportionality test. State v. Williams, 2006 SD 11, ¶12 n2, 710 NW2d 427, 432 n2.

> "[To] assess a challenge to proportionality we first determine whether the sentence appears grossly disproportionate. To accomplish this, we consider the conduct involved, and any relevant past conduct, with utmost deference to the Legislature and the sentencing court." If the sentence does not appear grossly disproportionate, no further review is necessary. If the sentence does appear grossly disproportionate, an intra- and inter-jurisdictional analysis shall be conducted. We also consider "the gravity of the offense and the harshness of the penalty;" and other relevant factors, such as the effect this type of offense has on society.

*Id.* ¶12 (citations omitted). When reviewing sentences, we evaluate the individual sentence for each count, opposed to scrutinizing the aggregate sentence. State v. Buchhold, 2007 SD 15, ¶¶30-32, 727 NW2d 816, 823-24.

[¶42.] We have previously noted "crimes against children especially sex offenses, have increased nationwide by epidemic proportions"; as a result, our Legislature has imposed significant penalties for persons who exploit children for sexual gratification. State v. Blair, 2006 SD 75, ¶24, 721 NW2d 55, 62. Each image of child pornography represents a separate offense, punishable by up to ten years in the state penitentiary and a $20,000 fine. State v. McKinney, 2005 SD 74, ¶27, 699 NW2d 460, 468 (citations omitted); SDCL 22-6-1(7).

[¶43.] Dubois contends the thirty year sentence was grossly disproportionate to the crimes. He argues that the court failed to consider that there was no

evidence presented demonstrating his sexual deviance had progressed beyond mere possession of child pornography, that there was no evidence of any actual "emotional or other" harm caused to the victims, and that he has no substantial criminal record.

[¶44.]     We first consider Dubois' conduct.  Three of the charges derived from contact (via telephone and internet) Dubois had with a twelve to thirteen-year-old (A.J.).  Dubois had knowledge of his age yet continued to carry on sexually charged conversations and to solicit the child for pictures of his penis.  Furthermore, Dubois unsuccessfully attempted to set up face-to-face meetings with the minor.  Additionally, evidence was presented which demonstrated similar conduct with another allegedly underage child.  This predatory behavior certainly concerned the court.  It stated, "[Dubois] preyed upon children half [his] age . . . in an attempt to satisfy [himself]."

[¶45.]     The court believed Dubois to be a person with psychological problems who attempted to minimize his crimes.  Although Dubois claims there was no evidence presented that his sexual deviance had progressed, the pre-sentence psychosexual evaluation labeled him as:  "self-absorbed"; "defensive"; minimizing his actions as merely conversations; and described Dubois as being in the "development stage of pedophilia."  The judge noted that in his thirty years on the bench he had never heard such a classification.  The evaluations also warned of risk factors that indicated it was only a matter of time until Dubois became more confident and assertive, "in eliciting the young men."  The sentencing court relied on this evaluation heavily, acknowledging that it had read it "several times."

[¶46.]     Dubois' description of his crimes as harmless is unfounded. We have recognized that there are many layers to the harm caused by child pornography. First, the fact that the image exists and was "disseminated perpetuates the abuse initiated by the producer of the materials. '[T]he materials produced are a permanent record of the children's participation and *the harm to the child is exacerbated by their circulation.'* . . . The consumer who 'merely' or 'passively' receives or possesses child pornography directly contributes to this continuing victimization." *McKinney,* 2005 SD 74, ¶29, 699 NW2d at 469 (citations omitted) (emphasis in original). Second, the mere existence of child pornography is a direct violation of that child's privacy and reputational interests. *Id.* (citations omitted). Third, the aficionado or consumer of this abusive material "instigates the original production of child pornography by providing an economic motive for creating and distributing the materials." *Id.* (citations omitted). Congress has explicitly found:

> [T]he existence of and traffic in child pornographic images . . . inflames the desires of child molesters, pedophiles, and child pornographers, thereby increasing the creation and distribution of child pornography and the sexual abuse and exploitation of actual children who are victimized as a result of the existence and use of these materials[.]

*Id.* (quoting United States v. Norris, 159 F3d 926, 929-30 (5thCir 1998) (quoting 1996 Act, 121, 110 Stat at 3009-27)). "The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects." *Id.* (citations omitted). In this case, Dubois was more than a passive participant; he actively preyed on at least one child.

[¶47.]      Finally, Dubois claims that the sentencing court failed to consider his minimal criminal record, which included two convictions for theft by deception. Although a court may consider past criminal conduct when sentencing, the court made it clear that its main concern was Dubois' exploitation of children. The court stated specifically that the sentence was designed to "incapacitate" the threat of Dubois. The court expressed its belief that Dubois' chances of rehabilitation were "slim" because of Dubois' minimalization of his crimes and his failure to recognize that he has psychological problems. Dubois has failed to establish that the sentence constitutes cruel and unusual punishment.

[¶48.]      We affirm.

[¶49.]      GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.